UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Sharon Wilson** <br> 3892 Washington Boulevard <br> University Heights, Ohio 44120, <br><br> Plaintiff, <br><br> v. <br><br> **Xtra Helping Hands Healthcare Provider, Inc.** <br> c/o Neil Siegel, Statutory Agent <br> 24400 Chagrin Boulevard, Suite 300 <br> Beachwood, Ohio 44122, <br><br> AND <br><br> **Dreamer J. Sanders** <br> 3362 E. 137th Street <br> Cleveland, OH 44120, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> **COMPLAINT AND JURY DEMAND** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Plaintiff, Sharon Wilson, by her attorneys, and for her Complaint against Defendants, Xtra Helping Hands Healthcare Provider, Inc. and Dreamer J. Sanders, states as follows:

**INTRODUCTION**

1. Plaintiff, Sharon Wilson ("Plaintiff"), brings this action against Defendants, Xtra Helping Hands Healthcare Provider, Inc. ("Xtra Helping Hands") and Dreamer J. Sanders ("Sanders") (together, "Defendants"), seeking monetary relief and damages for the following claims: (1) failure to pay Plaintiff proper wages in compliance with the Fair Labor Standards Act ("FLSA") pursuant to 29 U.S.C. § 206; (2) negligence *per se* through Defendants' failure to comply with Title III of the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1673; (3) negligence through Defendants' failure to act

1

reasonably in fulfilling their duties as employers of Plaintiff to comply with all relevant statutes and regulations related to employment and employee pay; and (4) intentional infliction of emotional distress. From November 2017 until Plaintiff's leave of absence on March 1, 2019, employer garnished Plaintiff's wages well in the excess of federal standards for the majority of Plaintiff's pay periods. Plaintiff contacted Defendants on multiple occasions regarding the improper garnishment, including the hand delivery of a court order to halt the garnishments, but Defendants continued to unlawfully garnish Plaintiff's wages.

2. Plaintiff seeks monetary damages to which she is justly entitled under the law, attorneys' fees, and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over Plaintiff's state law claims pursuant to supplemental jurisdiction, 28 U.S.C. § 1367. Venue is proper in the Northern District of Ohio as all claims arise in the District, and Plaintiff and Defendants reside in the District.

## PARTIES

4. Plaintiff resides in University Heights, Ohio. Plaintiff was an employee of Xtra Helping Hands as a home health aide during all times relevant to this action covered by 29 U.S.C. § 203.

5. Defendant Xtra Helping Hands is a registered for-profit corporation in Cleveland, Ohio which provides home healthcare services. During all times relevant to this action, Xtra Helping Hands was an employer covered by 29 U.S.C. § 203.

6. Sanders is, upon information and belief, the owner of Xtra Helping Hands. Sanders resides in Cleveland, Ohio. During all times relevant to this action, Sanders was the owner and had control and decision-making authority of Xtra Helping Hands. Sanders also had supervisory authority over the hiring and firing of Plaintiff, the payment of Plaintiff's wages, and allowing, directing, ratifying, participating in, or otherwise causing the unlawful acts described herein.

## FACTS

7. Plaintiff is a single parent who cares for her youngest son and three of her grandchildren. Plaintiff is the primary provider of financial support for her household and relies on her work income to provide for her family. Plaintiff has a high school degree and completed two years of a college education.

8. Xtra Helping Hands paid Plaintiff on a biweekly basis. Plaintiff began working for Xtra Helping Hands on or around June 1, 2016. Plaintiff worked as a home health aide and made a salary of $8.75 per hour.

9. On November 15, 2017, a garnishment order was entered against Plaintiff on behalf of PSE Credit Union, Inc. in connection with a default judgment issued against Plaintiff in Cuyahoga County Court of Common Pleas Case No. CV-08-657580, captioned *PSE Credit Union, Inc. vs. Sharon Williams*.

10. The CCPA places statutory limits on what wages can be garnished. For an employee that is paid biweekly, their wages may not be garnished if they earn $435.00 or below in disposable income. If an employee earns up to $580.00 biweekly, only the amount in excess of $435.00 may be garnished. If an employee earns above $580.00 biweekly, then only 25% of their disposable income may be garnished. *See* 15 U.S.C. § 1673.

11. On November 30, 2017, Defendants took the first garnishment from Plaintiff's paycheck. During that pay period, Plaintiff worked 60 hours. Based on Plaintiff's hourly pay rate of $8.75, her gross pay was $525.00. After Defendants deducted a total of $67.15 for taxes and other mandatory deductions, Plaintiff was left with total disposable income of $457.85. Under the applicable garnishment laws, Defendants should have deducted Plaintiff's pay above $435.00, which in total should have been $22.85. Instead, Defendants deducted $114.46 from Plaintiff's paycheck, resulting in an excess garnishment of $91.61.

12. Following the initial garnishment, Defendants garnished a flat amount of $124.65 from Plaintiff's paycheck for nearly every pay period regardless of her wages. The only times when Defendants did not garnish the full $124.65 from Plaintiff's paycheck was when Plaintiff's disposable income totaled less than that amount. In those situations, Defendants garnished Plaintiff's entire paycheck, leaving Plaintiff with $0 in net pay.

13. Despite its clear obligation as an employer to comply with the applicable garnishment laws and regulations, Defendants neglected to conduct an analysis on a paycheck to paycheck basis of what they should have deducted from each paycheck for purposes of garnishment.

14. Defendants routinely garnished more than legally permitted. For example, on November 15, 2018, Plaintiff received $0 net pay due to Defendants' excess garnishment. During that pay period, Plaintiff worked 12 hours. Based on her hourly pay rate of $8.75, her gross pay was $105.00. After Defendants deducted a total of $10.94 in taxes, Plaintiff was left with $94.06 in disposable wages and therefore unable to be legally garnished. Nonetheless, Defendants garnished the entirety of the $94.06 from her paycheck,

4

resulting in an excess garnishment of $94.06 and leaving Plaintiff with $0 in take-home pay. On the check issued November 30, 2018, Plaintiff received $8.47 net pay. During that pay period, Plaintiff worked 17 hours. Based on her hourly pay rate of $8.75, her gross pay was $148.75. After Defendants deducted a total of $15.63 in taxes, she was left with $133.12 in disposable wages and therefore unable to be legally garnished. Nonetheless, Defendants garnished $124.65 from her paycheck, leaving Plaintiff with $8.47 in take-home pay.

15. Plaintiff attempted to resolve the improper garnishment issue with Defendants almost immediately after the garnishment started. In December 2017, Plaintiff first raised concerns with Defendants about the amounts garnished from her pay. Defendants told Plaintiff that they were correctly calculating the garnishment amount and told Plaintiff to contact an attorney if she believed that there was an issue with the way Defendants calculated the garnishment.

16. Based on Plaintiff's reliance on Defendants' representation that they were acting properly with respect to the garnishment, and because of Plaintiff's incorrect assumption that Defendant knew how to properly calculate a garnishment based on its status as an employer in the State of Ohio, Plaintiff did not consult with an attorney to raise her concerns. As such, the garnishments continued for over a year, and Plaintiff continued to have money to which she was lawfully entitled improperly deducted from her paycheck.

17. On or around December 14, 2018, Defendants provided Plaintiff with her paycheck during an annual holiday party for Defendants' employees. After Plaintiff received her paycheck, Defendants' agent laughed at Plaintiff's expense knowing what Plaintiff would

5

discover upon reviewing her paycheck. When Plaintiff opened her paycheck, she realized that it totaled $0.66 in net pay following Defendants' garnishment of $124.65.

18. In February 2019, Plaintiff contacted an attorney to discuss ways to stop the garnishment and discovered for the first time that, despite Defendants' claims to the contrary, the garnishment calculations were wildly incorrect, improper, and not in compliance with garnishment laws.

19. The attorney with whom Plaintiff met in February 2019 immediately called Sanders to inform her of Defendants' improper garnishment practices. For a single pay period immediately following that phone call, Defendants garnished no wages from Plaintiff's pay.

20. On February 19, 2019, Defendants were put on notice via letter about their improper garnishment activities and Plaintiff requested a halt on all future garnishments that did not comply with the garnishment laws.

21. On February 28, 2019, following Defendants' receipt of the February 19th letter, Defendants again improperly garnished Plaintiff's wages for $124.65, leaving Plaintiff with $16.30 in net wages.

22. Left with no other choice to stop the garnishments, Plaintiff requested an emergency garnishment hearing with the Cuyahoga County Court of Common Pleas to address the improper garnishments. The Court ultimately found the garnished amounts to be improper and ordered an immediate stay on all future garnishments.

23. On March 13, 2019, Judge John Russo of the Cuyahoga County Court of Common Pleas issued a Court order to Defendants ordering Xtra Helping Hands to cease all

garnishments. Plaintiff hand-delivered a copy of the signed order to Defendants' office that same day.

24. Due to the ongoing excess garnishments that left her spending more money to travel to and from work than the amount she received in take home pay, Plaintiff told Defendants on or about March 1, 2019 that she wished to take a leave of absence from her position with Defendants.

25. On Plaintiff's paycheck dated March 15, 2019, Defendants again garnished Plaintiff's wages despite the court order. With the improper garnishment, Plaintiff's net pay was $0.00. In addition, Defendants also failed to pay Plaintiff for three hours of work which Plaintiff worked and reported during that pay period.

26. Following an order issued by Judge Russo in the Common Pleas Court, the creditor refunded the improperly garnished wages to Plaintiff.

27. Because of Defendants' ongoing misconduct, Plaintiff suffered an array of economic, physical, and emotional damages. In July of 2018, Plaintiff's car was repossessed after she fell behind on payments, she was unable to make as a direct result of her lost wages. Plaintiff also had to routinely borrow money from friends and family to afford to get to work. In February of 2019, Plaintiff was unable to pay her electricity bill due to a lack of funds that stemmed directly from her improper garnishments. In March of 2019, Plaintiff had to borrow $100 from friends and family to pay the balance of the bill. Plaintiff also regularly fell behind on other bills and was penalized with additional late fees. Plaintiff has been evicted from multiple residences due to her inability to pay rent as a result of the excess garnishments. Also, in March of 2019, Plaintiff had to renegotiate the payment plan on her vehicle because she did not have the funds necessary to make a payment in

7

March 2019, resulting in Plaintiff accruing additional late fees and penalties on the payment plan.

28. Plaintiff also suffers from extreme stress and anxiety because of Defendants' actions. On February 22 and March 12, 2019, Plaintiff visited the emergency room for pain in her neck and shoulders from the ongoing stress. She was prescribed muscle relaxers for the pain as well as physical therapy sessions. Plaintiff regularly attends physical therapy sessions to treat the pain being caused by the extreme stress. Plaintiff also has trouble sleeping and has been unable to sleep more than 2-3 hours a night since the beginning of the garnishments. Plaintiff continues to feel hopeless and angry about the ongoing garnishment issue. Plaintiff's doctors have attributed these health issues to the ongoing garnishment situation.

## FIRST CAUSE OF ACTION

### Violation of the Fair Labor Standards Act

29. Plaintiff realleges paragraphs 1-28 as if fully restated herein.

30. Defendants' failure to pay Plaintiff's wages for all of Plaintiff's hours worked is in violation of the FLSA, 29 U.S.C. § 206.

31. Through Defendants' failure to pay Plaintiff for all hours Plaintiff worked, Defendants exploited Plaintiff's labor without providing proper compensation.

32. As a direct result of Defendants' conduct, Plaintiff suffered monetary damages in the amount $25.65 (3 hours of work at $8.55 an hour). Plaintiff is also entitled to liquidated damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
### (Negligence *Per Se*)

33. Plaintiff realleges paragraphs 1-32 as if fully restated herein.

34. Defendants failed to comply with 15 U.S.C. § 1673 through their repeated and willful garnishments in excess of the statutorily allowed amounts. Defendants' continued violations of the statute despite being put on notice on three separate occasions -- first via phone, then by letter, and finally by court order -- demonstrates Defendants' blatant disregard of their statutory duty.

35. As a direct result of Defendants' conduct, Plaintiff suffered monetary damages in the amount of $1,707.56 as a result of improperly garnished wages, which has since been refunded and is not a part of Plaintiff's damage calculation in this litigation, economic damages as a result of her severely reduced pay and inability to cover her expenses, and pain and suffering due to the ongoing misconduct.

### **THIRD CAUSE OF ACTION**
### **(Negligence of Duty)**

36. Plaintiff alleges paragraphs 1-35 as if fully restated herein.

37. Defendants, as employers, had a duty of reasonable care to Plaintiff to follow all employment laws and practices which employers are obligated to follow and violated that duty through their ongoing negligent wage garnishments in excess of the statutorily mandated amount even in the face of repeatedly provided notice.

38. Defendants have a duty to exercise reasonable care in their relationship with their employees, and that includes properly complying with reasonable workplace standards and employment laws. The duty also encompasses having proper procedural safeguards and oversights in place to correct any mistakes or failures in complying with employment laws and standards.

39. Defendants breached their duty to Plaintiff through their continued failure to comply with well-known and established laws and practices regarding employee wage garnishments.

9

Defendants continued to violate their duty even after receiving notice via a phone call, a letter from an attorney advising Plaintiff, and a court order from the Cuyahoga County Court of Common Pleas. At no point did Defendants take the proper action and correct their blatant error of continuously garnishing egregious amounts from Plaintiff's paychecks.

40. Because of Defendants' conduct, Plaintiff suffered monetary damages in the amount of $1,707.56, economic damages as a result of her severely reduced pay and inability to cover her expenses, and pain and suffering due to the ongoing misconduct.

### FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

41. Plaintiff alleges paragraphs 1-40 as if fully restated herein.

42. Defendants, in their callous mistreatment and disregard of Plaintiff's well-being and privacy, intentionally inflicted emotional distress on Plaintiff through their mockery of Plaintiff's garnished wages and public sharing of knowledge of Plaintiff's garnished pay with other employees of Defendants.

43. Defendants were aware of Plaintiff's distress regarding the excess garnishments; Defendants intentionally continued their misconduct, laughing at Plaintiff when she received paychecks for less than one dollar; and Plaintiff suffered severe emotional distress from Defendants' egregious conduct, including stress, depression, and sleep deprivation. Plaintiff is currently attending physical therapy to deal with debilitating pain she is experiencing from her severe stress.

44. Defendants' conduct was outrageous and was for the purpose of causing Plaintiff emotional distress so severe that it could be expected to adversely affect her mental health.

45. As a direct result of Defendants' conduct, Plaintiff suffered distress which resulted in severe emotional damages, pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

   a. Plaintiff's economic loss as a result of Defendants' wrongful actions, including unpaid wages;

   b. Statutory damages;

   c. Liquidated damages;

   d. Punitive damages;

   e. Damages for the emotional distress and pain suffered as a result of Defendants' conduct;

   f. All reasonable and necessary attorneys' fees;

   g. Court costs;

   h. Pre and post-judgment interest; and

   i. All such other relief to which the Court determines Plaintiff is justly entitled.

Respectfully Submitted,

*/s/ Eric S. Zell*_____
ERIC S. ZELL (0084318)
MASON A. PESEK (0098105)
The Legal Aid Society of Cleveland
1223 West Sixth Street
Cleveland, OH 44113
(216) 861-5873
Fax: (216) 861-5221
mason.pesek@lasclev.org
eric.zell@lasclev.org

*/s/Edward A. Icove*_____
EDWARD A. ICOVE (0019646)
Icove Legal Group Ltd.
Terminal Tower, Suite 3220
50 Public Square
Cleveland, Ohio 44113
(216) 802-0000
Fax: (216) 802-0002
ed@icovelegal.com

*Attorneys for Plaintiff*


JURY DEMAND

Plaintiff demands a trial by jury in this case.

*/s/ Eric S. Zell*_____
One of the Attorneys for Plaintiff